

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/11/2015

| | | |
|---|---|---|
| IN RE: § | | |
| HASSELL 2012 JOINT VENTURE AND § | CASE NO: 15-30781 | |
| SPRINGWOODS JOINT VENTURE § | | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |

## MEMORANDUM OPINION

On February 5, 2015, R. Hassell Holding Company Inc. ("R. Hassell"[1]) filed an involuntary petition against "Hassell 2012 Joint Venture and Springwoods Joint Venture." Unlike a typical involuntary petition that is filed by one or more creditors, the petition was filed by R. Hassell in its capacity as a general partner of the alleged debtor. *See* 11 U.S.C. § 303(b)(3)(A), allowing a petition against a partnership to be filed by "fewer than all of the general partners in such partnership."

James C. Hassell, Hassell Construction Co., Inc., and Hassell Management Services, L.L.C. filed a motion to dismiss the involuntary petition. The disputing parties cannot agree on whether (i) there is a single entity comprising the activities of Hassell 2012 Joint Venture and of Springwoods Joint Venture; (ii) there is[2] a general partnership comprising the activities of Hassell 2012 Joint Venture; or (iii) there is a general partnership comprising the activities concerning the installation of improvements at a Springwoods project.

The parties have requested the Court issue a narrow ruling on the second question set forth above: Is there a general partnership comprising the activities of Hassell 2012 Joint Venture? If the Hassell 2012 Joint Venture is not a partnership, then the involuntary petition

---

[1] This is a dispute between Hassell family members and entities owned by members of the Hassell family.

[2] The Court does not address whether the Hassell 2012 Joint Venture has been dissolved. Whether the entity has been dissolved may be an issue for another day.

must be dismissed.  If the Hassell 2012 Joint Venture is a partnership, then the partnership must be given an opportunity to contest the involuntary petition.

Because the Hassell 2012 Joint Venture constitutes a general partnership under Texas law, the Court does not dismiss the petition at this time.

## Procedural Posture

On February 5, 2015, R. Hassell Holding Co., Inc. ("RHCI") filed an involuntary chapter 11 petition against Hassell 2012 Joint Venture and Springwoods Joint Venture.  (ECF No. 1).  RHCI is an entity owned by Royce Hassell, the oldest son of James C. Hassell.  (ECF No. 9 at 2).  The Hassell and Springwoods joint ventures were formed between RHCI, and two family owned companies, Hassell Construction Co., Inc. ("HCCI"), and Hassell Management Services, L.L.C. ("HMS").

On February 25, 2015, James C. Hassell, HCCI, and HMS (collectively, "Movants") filed a motion to dismiss the case pursuant to 11 U.S.C. §§ 303(b) and 707(a) and Fed. R. Civ. P. 12(b)(6).  (ECF No. 22).  Movants alleged that Debtors were merely joint ventures, not true partnerships, and did not satisfy the standing requirements of § 303(b).  They further alleged that the bankruptcy filing was in bad faith.

On March 25, 2015, the Court held a hearing on whether a partnership existed as of the petition date.  At the conclusion of the hearing, the parties requested the Court issue a ruling on the narrow issue of whether the Hassell 2012 Joint Venture was a partnership as of the petition date.  After receiving additional briefing on the issue, the Court took the matter under advisement.

### The Formation of Hassell 2012 Joint Venture

There is no true dispute that the Hassell 2012 Joint Venture was formed. There is an executed joint venture agreement, the parties operated under the joint venture agreement, accounted for the joint venture agreement, and obtained relief in State Court (a referral to arbitration) under the joint venture agreement. The issue is whether the joint venture constitutes a general partnership.

On July 1, 2012, RHCI, HCCI, and certain entities controlled by Royce Hassell entered into a "Construction Joint Venture Agreement." (ECF No. 22-1). The essential elements of the Construction Joint Venture Agreement are as follows:

- The venture was formed for the purpose of performing public and private sector construction projects. With the written consent of the venturers, new projects would be included from time-to-time.

- HCCI would receive 75% of all profits and the R. Hassell entities would receive 25% of all profits.

- HCCI would bear 75% of all losses and the R. Hassell entities would bear 25% of all losses, per paragraph 5(a) of the agreement. Paragraph 12 later states that losses would be borne equally by the parties. This inconsistency is not relevant to this Memorandum Opinion.

- HCCI would provide 75% of all required capital and the R. Hassell entities would provide 25% of all required capital.

- All parties would execute appropriate indemnities and agreements with surety bond companies.

- All decisions would be made by mutual agreement; in the absence of an agreement on a course of conduct, disputes would be resolved by arbitration.

- Books and records would be maintained by one of the venturers; the books and records would be open for inspection by all venturers.

- The venture would not file its own tax returns.

- The venturers had a duty to disclose opportunities to each other, and no venturer could take venture opportunities for its own benefit.

Like most family disputes, context matters. At the time that the Joint Venture Agreement was executed, the venturers had two major considerations. First, public sector construction work had slowed considerably in the greater Houston area. The parties to the joint venture saw various business benefits from combining their resources. This factor militates towards giving credence to the traditional view of partnership formations based on joint efforts to produce operating profits.[3] Second, Royce Hassell was recovering from a life threatening illness. Royce's father, and his siblings, wanted to make accommodations for Royce during his period of recovery. This laudable factor militates against a strict application of partnership formations.

In viewing the evidence before the Court, it is apparent that these were substantial businesses, with large capital investments, professional operations, and capable managers. Although familial love may have been a motivating factor, the result was a traditional business operation.

---

[3] At common law, an essential element of a partnership or a joint venture was a "community of interest in the venture." *Baskin v. Mortgage and Trust, Inc.*, 837 S.W.2d 743, 747 (Tex. App. 1992). A community of interest is defined as "a commonly shared incentive between the parties as to the progress and goals of the joint venture [or partnership.]" *Varosa Energy, Ltd. v. Trippelhorn*, 2014 WL 1004250 at *4 (Tex. App. Mar. 13, 2014).

## HCCI Accounting Reports

The nature of the entity as a professional business rather than a limited family venture can be seen through records produced by HCCI. HCCI produces an annual audit. (Pet. Ex. 42). Although the audits were prepared by an outside accountant, the audits are statements made by HCCI's management. The audits shed a great deal of light, adverse to HCCI, on the factors established by the Texas Business Organization Code.

The accounting firm that prepared the annual audits is Morris, Ligon & Rodriguez. Mr. Ligon testified about the audit and the auditing process. He is a highly credible witness[4]. The information in the audit was presented to Mr. Ligon by HCCI management, and was confirmed by Mr. Ligon through the firm's auditing procedures. Typically the audit was unqualified, although the audit was qualified in one year because the auditors could not obtain confirming information from R Hassell. Because the information in the audit is being used in a manner adverse to HCCI, the absence of confirmation by R Hassell does not affect this decision.

The Court focuses on the audited financial statements for the year ended June 30, 2014. In the related party transactions portion of the audit, HCCI states the following:

- On July 1, 2012, HCCI entered into a joint venture agreement with R. Hassel.

- The joint venture agreement provides for a 75%/25% sharing of profits.

- The joint venture agreement provides for an equal sharing of losses.

- The joint venture agreement provides for the allocation of overhead expenses by the venturers to the venture.

- The joint venture agreement provides for the allocation of equipment expenses "in accordance with sound accounting practices."

---

[4] Mr. Ligon concluded that—under applicable accounting standards—no partnership was formed. Although the Court credits Mr. Ligon's knowledge on this issue, the conclusion carries no weight on whether a partnership was formed under Texas law.

- The joint venture was terminated on July 17, 2013, but contracts that were in existence as of July 17, 2013 will continue to be treated as joint venture contracts.

(Pet. Ex. 42, p. 14.)

### Legal Standards for Formation of a Partnership

Under Texas statutes, "an association of two or more persons to carry on a business for profit as owners creates a partnership." *Ingram v. Deere,* 288 S.W. 3d 886 (Tex. 2009). The Texas Business Organizations Code establishes five basic "Rules for Determining if Partnership is Created" that measure whether an association has been formed to carry on a business for profit as owners:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

 (A) losses of the business; or

 (B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

Tex. Bus. Org. Code § 152.052(a).

Section 152.052(b) sets forth that no one factor out of an enumerated list is dispositive of whether a partnership exists. Section 152.052(c) states that an agreement to share losses is not necessary to establish a partnership. Tex. Bus. Org. Code § 152.052.

Despite the family ties, the facts of this case unambiguously establish the existence of a general partnership under Texas law.

*The First Factor: Profit Sharing*

Although profit sharing was a common law requirement for the establishment of a general partnership, profit sharing is not a requirement for the establishment of a general partnership under Texas statutory law. *Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex. 2009). Nevertheless, profit sharing (along with control over the affairs of the business) is one of the two most important elements to be considered. *Id.*

In this case, profit sharing is firmly established. It was required by the terms of the joint venture agreement, and recognized in the audit report.

This factor weighs heavily in favor of a partnership finding.

*The Second Factor: Expression of Intent*

This factor is neutral to slightly negative with respect to whether a partnership was formed. When analyzing intent to form a partnership under the statute, courts should review the putative partners' speech, conduct, and writings. *Inrgram v. Deere*, 288 S.W.3d 886, 899 (Tex. 2009). Evidence of expressions of intent may include the parties' statements that they are partners, holding the other party out as a partner, or business letterhead or nameplates. *Id.* at 900. Although the parties used the term "Joint Venture" when drafting their written agreements amongst themselves, they informed third parties that when they engaged in a contract, they would receive the devoted services of both R. Hassel and HCCI. The joint venture did not file an information return for a partnership with the Internal Revenue Service. *The Third Factor: Participation or Right to Participate in Control of Business*

This factor favors the finding that a partnership was formed. The right to control a business means the right to make executive decisions. *Ingram*, 288 S.W.3d at 901. Mutual access to the business's books and records can be indicative of control. *Tierra Sol Joint Venture*

*v. City of El Paso*, 155 S.W.3d 503, 508 (Tex. App. 2004).  Paragraph 8 of the executed Joint Venture Agreement provides that all "decisions, commitments, agreements, undertakings, understandings, or other matters pertaining to the performance of the Construction Contract shall be mutually agreed upon by" the representatives of HCCI and of R. Hassel.  The Joint Venture Agreement plainly contemplates that the right to make executive decisions would be shared between the parties.  In addition, the Joint Venture Agreement stated that "[a]ll records of the Joint Venture shall be open for inspection of either Joint Venturer at all reasonable times." (ECF No. 22-1 at 3).

*The Fourth Factor: Agreement to Share in Losses and Liabilities to Third Parties.*

At common law, an agreement to share losses was necessary for the formation of a partnership.  *Ingram*, 288 S.W.3d at 902.  Under the modern statute such an agreement is not necessary.  Nevertheless, the Joint Venture agreement specifically provides for the sharing of any losses.  This factor favors a finding that a partnership was formed.  Paragraph 12 of the written joint venture agreement provides, "[i]f the performance of the Construction Contract results in a loss, the Joint Venturers shall be obligated equally for such loss." (ECF No. 22-1 at 3)..  Paragraph 15 further requires reimbursement by one Joint Venturer to the other for expenses incurred.

*The Fifth Factor: Contribution of Money or Property*

This factor disfavors a finding that a partnership was formed.  Although each of the venturers allowed their equipment to be used, the use was compensated at fair market rates.  Although HCCI bonding capacity was used, it was compensated at normal rates.  There is scant evidence that either side contributed anything of value without expecting direct compensation.

## Conclusion

Although no one factor is dispositive in determining the existence of a partnership, the two most important factors are (i) whether profit sharing exists; and (ii) whether joint control exists. *Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex. 2009) (citing Tex. Rev. Civ. Stat. art. 6132b-2.03 Comments of the Bar Committee). These factors are unambiguous. Indeed, the evidence is abundantly clear that the venturers shared control for the intended purpose of sharing profits from their ventures.

Having considered the factors set forth in the Texas Business Organization Code, the Court concludes that the relationship created in the July 1, 2012 Construction Joint Venture Agreement is a general partnership under Texas law.

An involuntary bankruptcy petition may be filed against the partnership. The partnership may respond.

The Court does not express a view as to whether or when the partnership commenced a dissolution.

SIGNED **May 8, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE