IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **HASSELL 2012 JOINT VENTURE,** *et al* | § | **CASE NO: 15-30781** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |

## MEMORANDUM OPINION

This Memorandum Opinion resolves James C. Hassell, Hassell Construction Company, Inc., and Hassell Management Services, L.L.C.'s (collectively, "HCCI") Motion for Summary Judgment. (ECF No. 111). HCCI argues that the petitioning creditor in this involuntary proceeding has not and cannot produce evidence sufficient to demonstrate that "the debtor is generally not paying such debtor's debts as such debts become due . . ." as required by 11 U.S.C. § 303(h)(1). The Court grants summary judgment, and dismisses the involuntary petition.

### *Celotex* and "No-Evidence" Summary Judgment Motions

HCCI describes its motion by way of reference to Texas state law as a "no evidence motion for summary judgment." (ECF No. 111 at 7). Federal law does not recognize this Texas procedure. *In re Perry*, 2009 WL 2753181, at *3 (Bankr. S.D. Tex. Aug. 26, 2009) ("there is no such thing as a 'no evidence' summary judgment under Federal Rules"). However, Fed. R. Civ. P. 56 provides an analogous alternative. The Court will consider HCCI's Motion for Summary Judgment as one that invokes the framework originally set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and is applicable when a party that does not bear the burden of proof at trial moves for summary judgment. The standard is set forth in detail below.

**Background**

On February 5, 2015, R. Hassell Holding Co. ("RHHC") filed this involuntary proceeding. (ECF No. 1). On May 11, 2015, the Court determined that the putative debtor was organized as a general partnership under Texas law. (ECF No. 61 at 9). The Partnership consisted of at least two general partners, R. Hassell Holding Company and Hassell Construction Co. Inc. (*Id.*).[1] Since the petition date, extensive discovery has taken place between HCCI and RHHC regarding the financial condition of the Partnership. (ECF No. 117-1) (a letter dated March 16, 2015, from HCCI's attorney to RHHC's attorney indicating the turnover of 44,788 electronic documents and 11 boxes of paper documents). Additionally, at a hearing on June 20, 2016, the Court ordered HCCI to again furnish the documents to RHHC in order to allow an accountant to review them for the purpose of responding to HCCI's motion for summary judgment.

In RHHC's response, it alleges several debts the Partnership was generally not paying as they became due. For the sake of organization, the Court has segregated the alleged debts into three general categories: (1) Alleged debts to certain third parties (primarily suppliers and contractors), (2) Alleged debts to Trustmark and Community Banks, and (3) Alleged debts that HCCI alleges are subject to a bona fide dispute as to liability or amount.

*(1) Alleged debts to certain third parties*

RHHC identifies several debts it alleges were not being paid as they became due and were not otherwise subject to a bona fide dispute as to liability or amount. To support these allegations, RHHC attached statements reflecting overdue invoices as well as emails from

---

[1] The Court addressed the formation of Hassell 2012 Joint Venture in detail in its May 2015 Memorandum Opinion (ECF No. 61).

vendors inquiring about the status of certain unpaid invoices. (*See e.g.*, ECF No. 121-19).[2] The dates on these statements and inquiries range from April 2014 through the petition date.

In its reply, HCCI argues that the unpaid invoices and inquiries regarding unpaid invoices attached to RHHC's response were in fact (1) paid prior to the petition date, (2) paid immediately following the petition date, or (3) subject to a bona fide dispute as to liability or amount. (ECF No. 122 at 7). For support, HCCI attached an affidavit of Phillip Hassel, the president of HCCI. Phillip Hassel's affidavit contains a spreadsheet prepared at his direction that reflects the status of the alleged unpaid invoices as either paid or disputed.[3] (ECF No. 122-5 at 1, 4).

*(2) Alleged debts to Trustmark and Community Banks*

RHHC alleges 2012 Hassell Joint Venture has debts outstanding to Trustmark and Community (formerly known as "Vista") Banks. Specifically, RHHC alleges that Trustmark Bank financed the equipment owned by RHHC which was leased to the Partnership. RHHC alleges that the Partnership's failure to pay equipment rentals to RHHC caused RHHC to default in its financing agreement with Trustmark Bank. Essentially, RHHC asserts that its debt to Trustmark Bank constitutes a matured, unpaid debt of the Partnership. Beyond the affidavit of Royce Hassell, RHHC provides no evidence to support this allegation. (ECF No. 121 at 22). RHHC does not allege an amount owed by the Partnership to Trustmark Bank.

---

[2] In one instance, RHHC attached an affidavit of a vendor that alleges he was not paid $1,400.00 for work he performed in November 2013 for the Partnership. (ECF No. 121-15). HCCI asserts that this claim is disputed. (ECF No. 122-5 at 4).

[3] A notable exception exists. As set forth in detail below, RHHC alleged a debt owed by the Partnership to Harris County for liquidated damages arising out of a construction contract. RHHC also introduced uncontested evidence to that effect. (ECF No. 121-19). HCCI neither objected to the evidence, nor disputed the debt in its reply. (ECF No. 122 at 5).

RHHC also alleges that the Partnership drew down on a line of credit at Community Bank that remains unsatisfied. (*Id.* at 23). RHHC makes this allegation "on information and belief." (*Id.*). RHHC does not allege an amount owed by the Partnership to Community Bank.

*(3) Debts HCCI alleges are subject to a bona fide dispute*

HCCI asserts several of the debts of the Partnership alleged by RHHC are disputed, and accordingly should not factor into the Court's § 303(h)(1) analysis. These include the alleged debts to (1) One Way Striping & Signs LLC ($1,400.00), (2) Texan Floor Service, Ltd. ($6,511.04), (3) Applied Finish ($47,080.24), and (4) the Railroad Commission of Texas (between $1,000.00 and $2,000.00, the $1,000.00 figure representing the Railroad Commission's offer to settle the charged $2,000.00 penalty). (ECF No. 121 at 19-21).

RHHC also alleged that it has its own claims against the Partnership that remain outstanding. These allegations are supported by various exhibits, apparently prepared by Royce Hassell, a principal of RHHC. (ECF No. 121-10 – 121-14). HCCI objects to the exhibits. (ECF No. 122 at 5) ("[the exhibits] contain unsupported tabulations and calculations made by Royce Hassell, without foundation, without any factual or documentary support . . . .").

Without waiving its objections to the exhibits that form the basis of RHHC's claims against the Partnership (which total approximately $1,633,628.00), HCCI alleges that RHHC owes HCCI far more (over $3,000,000.00). (ECF No. 122 at 8). Additionally, HCCI asserts that the debts are subject to a bona fide dispute. (ECF No. 122 at 9). HCCI refers the Court to a pending arbitration that involves the same claims RHHC now characterizes as undisputed debts of the partnership. (*Id.*).

For ease of reference, the following chart organizes the foregoing categories of alleged debts:

| Alleged Creditor | Amount | Disputed by HCCI | Court Finds Bona Fide Dispute at Petition Date | Date Outstanding | Alleged Payment Date |
|---|---|---|---|---|---|
| **Debts to certain third parties:** | | | | | |
| A-1 Erison Control, LLC | $ 2,000.00 | No | n/a | 9-Apr-14 | 29-Apr-14 |
| | $ 2,762.50 | No | n/a | 9-Apr-14 | 29-Apr-14 |
| United Rentals | $ 704.02 | No | n/a | 9-May-14 | 9-May-14 |
| | $ 840.12 | No | n/a | 27-May-14 | 27-May-14 |
| CHS Surety | $ 9,894.00 | No | n/a | 2-Jun-14 | 3-Jun-14 |
| Fireproof Contractors, Inc. | $ 2,934.55 | No | n/a | 16-Jun-14 | 10-Jul-14 |
| | $ 1,710.00 | No | n/a | 16-Jun-14 | 16-Jun-14 |
| McRay Crane | $ 5,780.00 | No | n/a | 25-Jun-14 | 25-Jun-14 |
| Holes Inc. | $ 2,820.00 | No | n/a | 5-Sep-14 | 10-Sep-14 |
| | $ 2,000.00 | No | n/a | 5-Sep-14 | 10-Sep-14 |
| Kone, Inc. | $ 37,522.15 | No | n/a | 7-Oct-14 | 10-Dec-14 |
| | $ 44,650.00 | No | n/a | 7-Oct-14 | 27-Apr-15 |
| Construction Eco Services | $ 900.00 | No | n/a | 9-Oct-14 | 17-Oct-14 |
| McCain (Traffic Systems Construction, Inc. ) | $ 447,669.47 | No | n/a | 23-Dec-14 | 6-Jan-15 |
| | $ 49,070.77 | No | n/a | For work completed Nov. 2014 | |
| Electrical Field Services | $ 3,223.00 | No | n/a | 14-Jan-15 | 4-Feb-15 |
| Texan Floor Service, Ltd. | $ 1,208.00 | No | n/a | 21-Jan-15 | 22-Jan-15 |
| Enterprise Fleet | $ 8,971.87 | No | n/a | 30-Jan-15 | 30-Jan-15 |
| Harris County | $ 797,400.00 | Yes | No | 5-Feb-15 | |
| United States Dept. of Labor | $ 420,300.00 | Unknown | n/a | 6-Feb-15 | |
| Acme Architectural Hardware | $ 13,433.55 | No | n/a | 6-Feb-15 | 6-Feb-15 |
| Joslin Construction | $ 3,131.34 | No | n/a | For work completed Dec. 2014 | 17-Mar-15 |
| Texas Irrigation Supply | $ 698.06 | No | n/a | For work completed May 2015 | |
| **Bank Debts:** | | | | | |
| Trustmark Bank | | | | | |
| Community (formerly "Vista") Bank. | | | | | |
| **Disputed Debts:** | | | | | |
| Railroad Commission of Texas | $ 1,000.00 | Yes | No | 11-Jun-14 | |
| One Way Striping & Signs LLC | $ 1,400.00 | Yes | No | For work completed Nov. 2013 | |
| Texan Floor Service, Ltd. | $ 6,511.04 | Yes | Yes | | |
| Applied Finish | $ 47,080.25 | Yes | Yes | | |
| RHHC | $ 1,533,528.00 | Yes | Yes | | |

The Court refers primarily to ECF No. 122-5 at 4 and ECF No. 121-19 to determine when an invoice was outstanding, and to ECF No. 122-5 at 4 to determine the date on which the check was issued in payment of the respective invoice.

**Jurisdiction and Authority**

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). *In re Moss*, 249 B.R. 411, 415 (Bankr. N.D. Tex. 2000).

**Summary Judgment Standard**

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 389, 407 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 739 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "The evidence is viewed in the light most favorable to the nonmovant." *Id.* (citing *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Davis v. Ft. Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where, as here, the nonmovant will bear the burden of proof at trial, the movant may satisfy its initial responsibility by "'showing'—that is, pointing out to the [court]—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2105). "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory

assertion that the plaintiff has no evidence to prove his case." *Celotex*, 477 U.S. at 328 (White, J., concurring).

"The burden then shifts to 'the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Davis*, 765 F.3d at 484 (quoting *Celotex*, 477 U.S. at 323). A party may not "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

In its motion, HCCI identifies a portion of the record that suggests RHHC cannot satisfy its burden of proof. Specifically, HCCI points out that RHHC filed bankruptcy schedules and a statement of financial affairs for the alleged debtor. The schedules do not list any debts owed by the alleged debtor. (ECF No. 3; ECF No. 7). Despite the extensive discovery that has taken place, and the amount of time RHHC has had to review the documents, RHHC has not amended the schedules and statement of financial affairs to identify any debts. If the discovery resulted in evidence that there were debts owed by the Partnership, RHHC had an affirmative duty to amend its schedules and statement of financial affairs to reflect them. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (recognizing the express, affirmative, and continuing duty of bankruptcy debtors to file and amend, as necessary, accurate schedules and statements of financial affairs).

The Court recognizes that RHHC may not have been able to identify the debts when it initially filed the schedules. Nevertheless, the issue is whether HCCI has established that the record presented to the Court is sufficient under *Celotex* to require the party with the burden of proof to present adequate evidence in support of that burden.

HCCI has satisfied its initial burden. Consequently, the burden shifts to RHHC to demonstrate that there is a genuine issue for trial. To survive HCCI's motion, RHHC must present evidence from which a factfinder might reasonably return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff").

## Analysis

As a preliminary matter, RHHC objects to HCCI's introduction of evidence in its reply brief, alleging that it is procedurally improper to consider evidence in a reply brief without allowing RHHC leave to respond. (ECF No. 123 at 2). A reply brief is generally limited to addressing matters presented in a motion and response. *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 730 n.3 (S.D. Tex. 2010); *AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011). A reply brief "is not the appropriate vehicle for presenting new arguments or legal theories to the court." *Nunez*, 408 F. App'x at 830. However, the evidence and arguments contained in HCCI's reply brief are directly responsive and related to the evidence and arguments raised by RHHC in its response. *See Lynch v. Union Pac. R.R. Co.*, 2015 WL 6807716, *1 (N.D. Tex. Nov. 6, 2015) ("[t]he matters objected to by Plaintiff with respect to Defendant's summary judgment reply and evidence, however, are specifically directed at and responsive to arguments and evidence in Plaintiff's response to Defendant's summary judgment motion."). In its response, RHHC identifies several debts of 2012 Hassell Joint Venture it suggests remain unpaid. (ECF No. 121 at 14-23). HCCI responded by attaching evidence to controvert RHHC's allegations. Accordingly, the Court will consider the arguments and

evidence contained in HCCI's reply. The Court will also consider RHHC's objections to the admissibility of that evidence. (ECF No. 123 at 4).

*11 U.S.C. § 303(h)(1)*

HCCI's motion alleges that RHHC cannot satisfy § 303(h)(1) of the Bankruptcy Code. Section 303(h)(1) states:

> (h) . . . the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount.

11 U.S.C. § 303(h)(1). Section 303(h) requires that the Court consider (1) the amount of the debt not being paid and (2) the number of creditors not being paid. *In re Edwards*, 501 B.R. 666, 682 (Bankr. N.D. Tex. 2013). A putative debtor may not be "generally" paying his debts as they come due even if he is paying "most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts." *Id.* Stated another way, courts must consider "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in her financial affairs." *In re Moss*, 249 B.R. at 422.

Under § 303(h)(1), the determination of whether the debtor is generally paying such debtor's debts as such debts become due must be made as of the petition date. *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993). Accordingly, the Court will not consider post-petition payments of debts that were due as of the petition date, nor will it consider debts that had not yet come due as of the petition date. *In re Norris*, 114 F.3d 1182, *6 (5th Cir. 1997). Likewise, the Court will only consider debts paid prepetition to the extent they bear on the debtor's overall conduct in its financial affairs.

When considering whether a debt is disputed, courts apply the same test for § 303(h)(1) as they do for § 303(b)(1). A debt is disputed, and accordingly not factored into the § 303(h)(1) determination, if there is "an objective basis for either a factual or a legal dispute as to the validity of the debt." *In re Sims*, 994 F.2d at 220. The petitioning creditor must establish a prima facie case that no bona fide dispute exists, once done, the Debtor bears the burden to demonstrate that a bona fide dispute does indeed exist. *Id.* Courts need not adjudicate the dispute to determine whether a bona fide dispute exists. *Id.*

**Alleged Debts**

*Alleged debts to certain third parties*

RHHC identifies debts owed to certain third parties that were past due at various points prepetition. (ECF No. 121 at 21; 121-19). However, RHHC offers little to demonstrate that the debts *remained* unpaid as of the petition date. Instead, RHHC asserts that "[t]he documents produced by HCCI in this case establish the existence of a *prima facie* evidence of claims against the Partnership, thus leading to the conclusion that the Partnership was not paying its debts as they became due as of the date of the involuntary petition . . . ." (ECF No. 121 at 20). These documents consist primarily of correspondence from vendors requesting the status of past-due invoices. (*See* ECF No. 121-19). The documents do little to establish that the invoices remained outstanding as of the petition date, but they do provide some evidence relevant to a § 303(h)(1) determination. Specifically, they address the debtor's overall conduct in its financial affairs. *See In re Moss*, 249 B.R. at 422.

In its reply, HCCI provides evidence that the majority of the debts RHHC alleged remained outstanding were in fact paid prior to the petition date.[4] The evidentiary record before the Court as to these debts is undisputed: although there was a point in time when the debts had not been paid, the debts identified as having been paid by HCCI were paid. Those debts will not apply to the calculus of unpaid debts. Nevertheless, three undisputed debts were outstanding to third parties on the petition date, amounting to approximately $96,852.11.[5] (ECF No. 122-5 at 4).

Accordingly, the Court will consider debts to third parties undisputed and outstanding as of the petition date in the amount of $96,852.11 between three creditors: (1) Traffic Systems Construction Inc., ($49,070.77), (2) Joslin Construction ($3,131.34), and (3) Kone, Inc. ($44,650.00).

*Alleged debt to Harris County*

RHHC alleges that the Partnership owes a debt to Harris County arising out of liquidated damages resulting from the Partnership's "Transtar" contracts. For evidence, RHHC relies on two letters dated October 20, 2014 sent from Harris County to HCCI's bonding company. The letters reference two construction projects for which construction has extended past the contractual completion date. The letters state:

> Liquidated damages for this [Transtar Parking and Generator Building] project are $1,000.00 per calendar day. Please be advised that this letter is formal notice that Hassell Construction Co., Inc. has been in liquidated damages since October 28, 2013.

---

[4] According to the affidavit of Phillip Hassell, only three debts owed to third parties alleged by RHHC remained undisputed and unpaid as of the petition date: (1) McCain (Traffic Systems Construction Inc.), ($49,070.77), (2) Joslin Construction ($3,131.34), and (3) Kone, Inc. ($44,560.00). (ECF No. 122-5 at 4).

[5] The alleged debt to Texas Irrigation Supply concerns work performed in May 2015, three months after the petition date. The alleged debt to the United States Dept. of Labor was first asserted post-petition. Accordingly, the Court will not consider them in its § 303(h)(1) analysis. (ECF No. 121-19 at 53; 121 at 22).

> Liquidated damages for this [Transtar Expansion] project are $1,200.00 per calendar day. Please be advised that this letter is formal notice that Hassell Construction Co., Inc. has been in liquidated damages since May 4, 2014.

(ECF No. 121-19 at 44-45). On January 5, 2015, HCCI (on behalf of the Partnership) drafted a letter in response to Harris County's notice requesting that liquidated damages not be assessed against the Transtar projects citing unforeseen delays and extenuating circumstances. (ECF No. 121-19 at 49). HCCI did not respond to this alleged debt in its reply to RHHC's response.

The record is devoid as to what it means to have "been in liquidated damages" versus to have "assessed" liquidated damages. Although it is possible that the letter to the bonding company establishes a prima facie case of a debt, there is no good faith argument that the letter to the bonding company establishes when the alleged debt is due. Under § 303(h)(1), RHHC must establish a prima facie case that the alleged debtor "is generally not paying such debtor's debts as such debts become due." Establishing a debt without even an inference of a due date does not establish a prima facie case that the alleged debtor is not paying debts "as such debts become due."

Although Harris County's records are publicly available, RHHC has presented no evidence of the kind that would reflect that a debt has come due; at most, RHHC has presented an inference of a debt without a due date.[6] The burden of proving a prima facie case with respect to Harris County is not a heavy one, but it has not been satisfied.

---

[6] As set forth elsewhere in this opinion, the Court could infer that an older trade debt has come due. The same is not true of a liquidated damages assertion made by a party to a contract. The Court notes that the assertion of the debt was made *only* to the bonding company (at least insofar as the summary judgment record reflects). When are the liquidated damages payable; does the payment date extend during the period of continuous work on the project? Is the debt only to the extent of an offset against payment? Is the assertion of the debt only an assertion against the bonding company and not against the alleged debtor? Are the liquidated damages only due after a demand has been made? These are important questions and demonstrate why a prima facie case has not been established.

Although the Partnership's request that the liquidated damages not be assessed does not constitute a basis for a factual or legal dispute as to the validity of the debt, nor does an ambiguous letter satisfy a prima facie case that a debt is not being paid as it comes due.

Accordingly, the alleged Harris County debt does not qualify as a debt that has come due for the purposes of § 303(h)(1).

*Alleged Debts to Trustmark and Community Banks*

RHHC alleges that the Partnership is in debt to Trustmark and Community Banks in an unidentified amount. RHHC offers very little evidence to support these alleged debts. Furthermore, the discussion of the Trustmark bank debt in RHHC's response strongly suggests that the debts are those of RHHC alone, not the Partnership. (ECF No. 121 at 22). For example, RHHC alleges it is owed rentals for equipment it leased to the Partnership. (ECF No. 121 at 15) (". . . the Partnership had failed to pay RHHC the remaining balance of its debt to RHHC of $1,440,490.51 for the Equipment lease costs that are owed to RHHC . . . ."). RHHC also alleges that the Partnership owes Trustmark Bank for RHHC's breach of the equipment finance agreement which resulted from the Partnership's failure to make rental payments to RHHC. (ECF No. 121 at 22). The Court will not entertain RHHC's attempts to recharacterize its breach of the financing agreement with Trustmark as a due and undisputed debt of the Partnership.

RHHC has neither identified the amount of the alleged debt owed to Community Bank, nor has it offered any evidence in support of its allegation. Accordingly, the Court will not consider it in its analysis.

**Alleged debts subject to a bona fide dispute**

HCCI asserts several of the debts of the Partnership alleged by RHHC are disputed, and accordingly should not factor into the Court's § 303(h)(1) analysis. These include the alleged

debts to (1) One Way Striping & Signs LLC ($1,400.00), (2) Texan Floor Service, Ltd. ($6,511.04), (3) Applied Finish ($47,080.24), and the Railroad Commission of Texas (between $1,000.00 and $2,000.00, the $1,000.00 figure representing the Railroad Commission's offer to settle the charged $2,000.00 penalty). (ECF No. 121 at 19-21).

HCCI disputes the debts to Texan Floor Service and Applied Finish. (ECF No. 122 at 6) ("[these alleged debts] reference two pending lawsuits against HCCI. The very fact that these are lawsuits, answered and disputed by HCCI, make the claims for payment asserted therein contested . . . ."). HCCI has met its burden of demonstrating that a bona fide dispute exists as to the alleged debts owed to Texan Floor and Applied Finish.

HCCI also disputes the debts to One Way Striping & Signs and the Railroad Commission. However, HCCI does not provide the Court with any evidence of a bona fide dispute beyond asserting in an affidavit that the debts are disputed. Such an assertion does not demonstrate that a bona fide dispute exists. (ECF No. 122-5 at 4). Accordingly, these debts will be considered by the Court as undisputed and unpaid as of the petition date in the amount of $2,400.00.

*Alleged Debt to RHHC*

RHHC asserts that it is owed a significant amount by the Partnership. RHHC alleges that an amount in excess $1,600,000.00 is a non-contingent, undisputed debt owed by the Partnership to RHHC that was due as of the petition date. (ECF No. 121 at 15-19). HCCI vigorously objects to the admission of the evidence underlying RHHC's claims.

RHHC has the burden to produce evidence that if considered at trial would allow the factfinder to reasonably find in RHHC's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the [factfinder] could reasonably find for the plaintiff"). RHHC's summary judgment evidence regarding the debt to RHHC is comprised entirely of the affidavit of Royce Hassell. The evidence need not be admissible *in form* at this stage, so long as it could be admissible *in content* at trial. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) (for example, "a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial."). Royce Hassell's testimony could be offered at trial, and accordingly, the potentially inadmissible calculations attached to his affidavit in RHHC's response could be admitted through the testimony of Royce Hassell at trial.

Nevertheless, the alleged debt to RHHC appears to be the subject of a bona fide dispute. HCCI attaches a letter sent from RHHC's attorney to HCCI which states that "all claims between [HCCI and RHHC] are subject to arbitration before the [AAA]." (ECF No. 122-5 at 11). The letter states that the arbitration concerns RHHC's allegations that HCCI has breached the Partnership agreement. (*Id.*) ("The partnerships, as now wrongfully controlled and directed by HCCI . . . have failed to pay obligations to RHHC as agreed and have indicated that they are unwilling or unable to pay the costs and expenses which are due and owing to RHHC from the partnerships.").

The debts asserted by RHHC against the Partnership and the claims asserted by RHHC against HCCI that are the subject of the arbitration proceeding are the same. (ECF No. 122 at 9) (". . . the alleged bad faith conduct of HCCI, alleged disloyal conduct in the breach of a partnership agreement, alleged misappropriation and misapplication of partnership revenues . . ."). The Court finds that these debts are subject to a bona fide dispute as to liability or amount, and consequently, does not consider them in its § 303(h) analysis.

**Debts undisputed and due as of petition date**

As set forth above, RHHC has introduced sufficient evidence to identify five debts totaling approximately $100,000.00 divided between five creditors) that were unpaid and not subject to a bona fide dispute as of the petition date:

| Alleged Creditor | Amount | Date Due |
|---|---|---|
| Kone, Inc. | $ 44,650.00 | 7-Oct-14 |
| McCain (Traffic Systems Construction, Inc. ) | $ 49,070.77 | (work completed Nov. 2014) |
| Joslin Construction | $ 3,131.34 | (work completed Dec. 2014) |
| Railroad Commission of Texas | $ 1,000.00 | 11-Jun-14 |
| One Way Striping & Signs LLC | $ 1,400.00 | (work completed Nov. 2013) |

These debts comprise the entirety of the pool of unpaid debts the Court may consider when making its § 303(h)(1) determination. The Court must now determine whether RHHC has produced sufficient evidence to allow a factfinder to reasonably conclude that these debts were *due* as of the petition date. The Court must then compare the undisputed debts that were due with the undisputed debts that were current as of the petition date to determine whether the Partnership was generally not paying its debts as they became due.

RHHC alleges that the Partnership owed Kone, Inc. $82,172.15 as of the petition date. For support, RHHC referenced a string of emails discussing an invoice in that amount. The affidavit of Phillip Hassell attached to HCCI's reply indicates that $37,522.15 of the amount was paid on December 10, 2014. (ECF No. 122-5 at 4). The balance ($44,650.00) was not paid until April 27, 2015. An invoice that was unpaid as of the petition date, by itself, is insufficient evidence to allow a factfinder to reasonably conclude that the invoice was *due* as of the petition date. However, that is not the case with evidence of an *old* invoice. 2 Collier on Bankruptcy ¶ 303.31[2] (Alan Resnick & Henry J. Sommer eds., 16th ed.) ("[t]he length of time the debtor has not paid is also relevant."). The emails reflect that the entire $82,172.15 was outstanding in

September and October 2014. This fact, coupled with the partial payment made on December 10, 2014, is sufficient to demonstrate the debt was due as of the petition date.

In contrast to the Kone invoice, the outstanding invoices to McCain and Joslin Construction were not old as of the petition date. The summary judgment record reflects that both invoices resulted from work completed in November and December 2014, respectively. There is no evidence that the invoices were due as of the February 5, 2015 petition date, and the inference granted to the Kone invoice based on its age, does not apply to the McCain and Joslin invoices.

The debts owed to the Railroad Commission and One Way Striping originated in June 2014 and December 2013, respectively. The sheer age of these debts warrants the reasonable inference that they were due as of the petition date. Accordingly, the Court will consider them undisputed debts, due as of the petition date in the aggregate amount of $2,400.00.

Based on the foregoing analysis, the following chart reflects the undisputed debts that were due as of the petition date as compared to the undisputed debts that had not yet come due as of the petition date:

| Alleged Creditor | Amount | Date Due |
|---|---|---|
| **Due as of petition date:** | | |
| Kone, Inc. | $ 44,650.00 | 7-Oct-14 |
| Railroad Commission of Texas | $ 1,000.00 | 11-Jun-14 |
| One Way Striping & Signs LLC | $ 1,400.00 | (work completed Nov. 2013) |
| Total: | $ 47,050.00 | |
| **Not due as of petition date:** | | |
| McCain (Traffic Systems Construction, Inc. ) | $ 49,070.77 | (work completed Nov 2014) |
| Joslin Construction | $ 3,131.34 | (work completed Dec. 2014) |
| Total: | $ 52,202.11 | |

While the 303(h) analysis is not a strictly formulaic, the numbers are instructive. 2 Collier on Bankruptcy ¶ 303.31[2] (Alan Resnick & Henry J. Sommer eds., 16th ed.) (courts may "undertake a rough calculus of the number and amount of the alleged debtor's delinquent and current debts on the petition date. These results determine whether the ratio of delinquent current debts is supportive of a pattern of generally not paying."). RHHC has the burden to put forward evidence upon which a factfinder could reasonably conclude that the Partnership was not generally paying its undisputed debts as they became due. The record at this stage reflects that $47,050.00 was undisputed and due as of the petition date. This figure represents approximately 47% of all outstanding and undisputed debts of the Partnership as of the petition date. Moreover, two invoices were paid and two were unpaid. The ratio of delinquent to current debts is not supportive of a pattern of the Partnership generally not paying its debts as they become due. Furthermore, the totality of the circumstances reflects that the few debts remaining as of the petition date reflect a pattern of payment of debts by the partnership. In that context, the failure to pay two relatively small obligations is a far cry from a general failure to pay debts as they come due.

Accordingly, having considered all pleadings filed regarding this motion,[7] the Court concludes that RHHC has not demonstrated that the Partnership was not paying its undisputed debts as they became due.

---

[7] ECF Nos. 111, 114, 115, 116, 117, 121, 122, 123, 124, and 125.

**Conclusion**

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **September 23, 2016.**

　　　　　　　　　　　　　　　　　　　　　　　　Marvin Isgur
　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE